DECISION
The matter before the Court is defendant, Terrence Traudt's motion to dismiss the state's motion to adjudge the defendant a violator under Rule 32(f) of the Superior Court Rules of Criminal Procedure. The defendant also asks this Court to declare the one year extension of his probation to be null and void.
The facts of this case are unfortunate and troubling. On or about October 17, 1987, the defendant, Terrence Traudt, while acting as a closing attorney for Imperial Savings Association, embezzled and fraudulently converted to his own use $124,747.20 which had been entrusted to him by Michael and Kathleen Baker. He was subsequently charged with embezzlement pursuant to G.L. 1956 (1981 Reenactment) §§ 11-41-3 and 11-41-5.
On February 13, 1989, before Justice Rodgers in the Washington County Superior Court, the defendant entered a plea of nolo contendere to the charges against him. He was sentenced to five years at the Adult Correctional Institution, with five months to serve, fifty-five months suspended, and fifty-five months probation. As a condition of his probation, the defendant was ordered to repay restitution in the amount of $124,747.20 by the expiration of his sentence. The Court also entered orders requiring the defendant to make restitution payments on a monthly basis. This plea proceeding was followed by two subsequent hearings before then Justice Rodgers. On February 23, 1989, the day the defendant was ordered to surrender, Judge Rodgers indicated he was inclined to vacate the defendant's plea because he was informed that, contrary to his clear understanding and that of the prosecutor, then Assistant Attorney General, now Attorney General Jeffrey Pine, the defendant and his wife were resisting efforts to sell the marital domicile, the only real asset the defendant owned, in order to make restitution to the victims. The matter was continued until March 1, 1989, for the availability of Mr. Chase. On March 1, 1989 the defendant, through counsel, resisted the Court's efforts to vacate his plea and insisted the sale of the house was not a condition of the plea. Apparently, the home had been transferred to Mrs. Traudt by the defendant. According to Mr. Chase the defendant wanted to keep the house for the probationary period to allow it to increase in value and sell it at the end of his probation. Mr. Chase indicated that Mrs. Traudt agreed to sell the house and to transfer 50% of the proceeds to the victims for restitution. The trial justice, obviously frustrated, acknowledged he could not legally vacate the sentence. Judge Rodgers noted that he had rejected the prosecutor's recommendation of six months to serve and sentenced the defendant to five months at the Adult Correctional Institutions. Further, he stayed the execution of the sentence and ordered the sentence to be served in the work release facility of the Adult Correctional Institutions. He then imposed an additional condition that restitution in the amount of not less than $50,000.00 be paid no later than November 1, 1989. Mr. Traudt objected to this condition. He did not make that payment, indeed his record of restitution payments is poor. The marital domicile was not sold until May 7, 1993, over four (4) years later and resulted in a mere $20,000.00 payment toward restitution. Certainly, this four year delay and the apparent accumulation of tax liens and an arrearage in the mortgages owed on the property are relevant on the issue of defendant's good faith and diligence in honoring his commitment to the Court,Bearden v. Georgia, 461 U.S. 660, 76 LEd 2nd 221, 103 S.Ct. 2064 (1983).
Defendant continued to make monthly payments of approximately $160.00 although at times he failed to do so.
On July 18, 1991, an order was entered requiring the defendant to pay four and one half (4.5%) percent of his monthly gross salary or one hundred sixty ($160.00) dollars, whichever is greater. On December 14, 1992, Justice Campanella again ordered the defendant to continue making $160.00 monthly payments as well as an additional $20.00 per month to make up for arrearages which he had incurred.
On the December 14, 1992 review date, in Justice Campanella's chambers, with the State's and the defendant's attorneys present, Justice Campanella noted that even if the defendant complied with the payment schedule set forth in the existing orders, defendant would not come close to satisfying the total amount of restitution. At that time it was suggested that the defendant's probation be extended for three years in order for him to fully satisfy his obligations. No action was taken on the matter at that time, and another probation review was scheduled for April 19, 1993, by the Court.
On December 18, 1992, Special Assistant Attorney General Ronald R. Gendron spoke with defendant's attorney, Joel Chase, on the telephone concerning the extension of probation. Attorney Chase stated that he would discuss the matter with his client and would know by the April review date whether his client would agree to extend his probation for any additional period of time.
On April 19, 1993, a probation review was held, but no action was taken on the extension of probation. At the next probation review, on May 24, 1993, the defendant's probation officer reported to Justice Campanella that the victims received a $20,000.00 payment, apparently from the sale of the defendant's home. Another review was scheduled for June 8, 1993.
As of June 8, 1993, it was apparent the sale of the house would not result in a sizeable reduction of the amount of restitution the defendant owed. On that date, Justice Campanella again noted that at the current rate of payment, the defendant would be unable to fully pay restitution by the expiration of his sentence. In lieu of possible future presentment with a Rule 32(f) notice of probation violation for nonpayment of restitution and possible term of incarceration if found to be a violator, the defendant agreed to extend his probation until March 5, 1995. The defendant and the State of Rhode Island entered into a signed stipulation extending his probation until March 1, 1995. Thus, by agreeing to extend his probation for one year, the defendant avoided a violation hearing on the issue of the delayed sale of his home, and the reduction in proceeds and was given another year to honor his restitution commitment.
The defendant did not make any more significant progress toward paying this restitution.
On September 19, 1994, the defendant was presented with a Rule 32(f) notice of probation violation as it became clear the defendant would not pay the full amount of his restitution by the end of his probation term. At that time, the defendant's attorney volunteered that he would be willing to extend his probation until October 1, 1995 to avoid being presented as a violator. The Court declined to accept the defendant's offer.
Throughout the travel of this case, the defendant, through his attorney or otherwise, at no time contested the authority of the Superior Court to extend his probation for the purpose of satisfying his restitution obligation.
Yet the defendant now maintains that while he received the benefit of his bargain the State cannot enforce the bargain against him.
Discussion
The defendant offers several arguments as to why the extension of his probation is null and void. First, the defendant contends that under G.L. 1956 (1994 Reenactment) § 12-19-9, the trial court lacked the authority to extend his probationary term. This section provides that when an individual is brought before the Court as a probation violator, if the Court finds the defendant to be a violator, the judge may ". . . remove the suspension and order the defendant committed on the sentence previously imposed, or on a lesser sentence, or impose a sentence if one has not been previously imposed, or may continue the suspension of a sentence previously imposed, as to the Court may seem just and proper." G.L. 1956 (1994 Reenactment) § 12-19-9.
The Rhode Island Supreme Court addressed this statute on two occasions. In State v. Taylor, 473 A.2d 290, 291 (R.I. 1984), the Court held that when an individual is before the Court as a violator, the statute does not allow for the imposition of an additional probationary period after the execution of the suspended sentence. More recently, in State v. Soprano,633 A.2d 1357 (R.I. 1993), the Court held that the trial court does not have the authority to extend the probationary period when the defendant appears as an alleged violator. The defendant also cites State v. Santos, 498 A.2d 1024 (R.I. 1985). This case merely holds that the Court must start revocation proceedings before the probation period ends. Id. at 1026.
None of the Rhode Island cases addresses the present situation where, at the time of the extension, the defendant was not before the Court as an alleged violator, but merely present for a routine probation review. Therefore, it must be determined whether the prohibitions of G.L. § 12-19-9 apply to situations where the defendant is not before the Court as an alleged violator. The interpretation of a statute is a question of law for the Court. East Providence v. Public Utilities Commission,566 A.2d 1305, 1307 (R.I. 1989). When interpreting a statute, the Court is obligated to ascertain the Legislature's intent. Statev. Kane, 625 A.2d 1361, 1363 (R.I. 1993). When enacting a statute, it is presumed that the Legislature intended every word to have some meaning and effect. State v. Reis, 430 A.2d 749, 752 (R.I. 1981).
The statute in question deals solely with violators of probation. The title of the section reads "Violation of terms of probation — Notice to attorney general — Revocation or continuation of suspension." Clearly, the Legislature intended this section to apply only when an individual is before the Court as an alleged probation violator. In the present case, the defendant was before the Court for a routine probation review. Therefore, the limitations of G.L. § 12-19-9 are not applicable to this case. Defendant has recently begun to insist that he was compelled to agree to extend the probationary period or face a violation hearing. The state acknowledges this to be the case. The Court is not persuaded by this argument. This defendant has, on several occasions, implored the Court for an additional extension of probation in order to fulfill his restitution obligation. The defendant actively participated in the extension of probation in this case and has benefited from his bargain. He avoided a violation hearing and was allowed to remain at liberty since June 8, 1993.
The Court finds that § 12-19-9 does not apply to situations in which a probationer seeks an extension of his probation for the purpose of fulfilling his or her restitution obligations.
Court's Authority to Extend Probation
The defendant's second argument is that the Court was without statutory authority to impose an extension of probation, and that as probation is a creature of statute, People v. Gore, 774 P.2d 877, 879 (Colo. 1989), the Court could not properly extend defendant's probation.
The Supreme Court has had occasion to visit the issue of suspended sentences, probation and revocation hearings many times. In State v. DeLomba, 117 R.I. 673, 370 A.2d 1273 (1977) the Court in an exercise of its supervisory jurisdiction assumed a creative judicial role and adopted an exclusionary rule at violation hearings. In the interest of affording a defendant the full panoply of due process rights mandated by Morrissey v.Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Court held the state must give the defendant use immunity for any testimony he or she gives at a violation hearing or postpone the violation until after the trial on the new charge which gives rise to the violation. The Court fashioned this judicially created immunity by balancing the defendant's due process rights against the interest of the public in the quick resolution of probation violation hearings and the removal from society of high risk violators.
In State v. Jacques, 554 A.2d 193 (R.I. 1989), the Supreme Court held that a trial justice has the inherent authority to revoke an offender's probation at any time after the imposition of the sentence regardless of whether the probationary term had actually commenced. The Court acknowledged there was no express statutory authority for this position nor was there any statutory prohibition. The Court proceeded to examine case law from other jurisdictions for guidance. In holding that probation can be revoked before it is commenced, the Court held the question is not whether the probationary period had started but "whether the potential probationer did, in fact, violate a condition of his probation." State v. Jacques, supra at 195. Thus, the focus is rightfully on the offender and the Court's authority over that person.
The Jacques Court extended that authority, in the absence of a statute, to a period before the probation commences.
In State v. Ronald Chase, 588 A.2d 120 (R.I. 1991), the Supreme Court in a landmark ruling held that the doctrine of collateral estoppel applies to probation violation hearings. The Court found that a finding of non-violation is a valid and final judgment and precludes the state from relitigating the issue of defendant's guilt or innocence for the underlying criminal offense. The Court noted that all of the requirements of collateral estoppel are present in State v. Chase: an identity of parties, an identity of issues and a finding that the prior proceeding resulted in a valid and final judgment.
These cases are persuasive authority for a finding that where there is no specific prohibition to the Court's action, State v.Taylor, supra, State v. Santos, supra, and State v.Soprano, supra, and State v. O'Rourke, 463 A.2d 1328 (R.I. 1983), then there is no per se prohibition which prevents the Court from exercising its authority over a probationer.
The issue of this case is the extent of the Court's authority over a probationer, during the period of probation but before a violation hearing has commenced. As the Supreme Court has instructed, the Court must first examine the law of other jurisdictions.
Extending probation was addressed by the United States Supreme Court in Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). The issue in this case concerned revocation of probation. The Court offered several alternatives to revocation including an extension of the time to make payments. Id. at 2071. This action would result from a decision of the trial court that the State's penal interests would be better satisfied by not incarcerating the defendant. Id.
Contrary to the defendant's contention, the Court does not condition its decision on the trial court having statutory authority to extend probation. It appears that the Court considered extending probation to be within the discretion of the trial justice.
Also, in State v. Belfry, 431 N.W.2d 572 (Minn. 1989), the extension of probation was deemed to be within the Court's power and a proper exercise of its discretion. Id. at 573. This Court cited Bearden in making its decision, and found that extending probation allowed for a less severe loss to the probationer while fulfilling the State's interest in seeing that the victims are compensated for their losses. Id. The one condition that was placed on the exercise of this power is that the total probationary term cannot exceed the maximum sentence. Id.
The defendant has acknowledged that he initially sought a longer period of probation, he then stipulated to a one-year extension of the probationary period and continued to implore the Court to grant him another extension of his probationary period.
On this basis and in light of existing case law the Court finds it is within the discretion of the trial justice, with the written acquiescence of the defendant to extend the probationary period. Such extensions are routinely requested by the Department of Probation for the limited purpose of making restitution. Clearly the State has a greater interest in seeing the victims compensated, rather than incarcerating the defendant. In the present case, the extension of the defendant's probation clearly served these goals. In addition, the total term of the defendant's sentence has not reached the statutory maximum of 20 years as provided in G.L. 1956 (1994 Reenactment) § 11-41-3.
Due Process
In addition to the above findings, the Court finds that the procedures employed by the Court when the defendant's probation was extended did not violate his right to due process. Whether due process requires procedural protections depends on the extent to which the defendant "will be condemned to suffer grievous loss." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, ___ (1972). The Court must determine if the nature of the defendant's interest falls within the "liberty or property" language of the Fourteenth Amendment. Id. (citingFuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972)).
In Skipworth v. United States, 508 F.2d 598 (3rd Cir. 1975) the Third Circuit addressed the nature of the interest involved when an individual's probation was extended by the Court ex parte. Id. at 599. The Court had to decide whether due process required notice and a hearing prior to the extension. Id. at 600. After considering Supreme Court opinions regarding revocation of probation and parole, the Court stated
. . . we do not believe that due process required notice and a hearing prior to the extension of the petitioner's probation. While we acknowledge that probation entails significant restrictions on an individual, an extension of probation is clearly not as "grievous" a "loss" as revocation, and here it entailed no greater restrictions that those which existed previously. In fact, the primary "loss" suffered by an individual whose probation has been extended lies not in the continuing restrictions themselves, but in the possibility of future revocation. While such a loss is indeed serious, it is merely potential at the time of the extension, and the due process clause clearly provides the protection of a hearing in the event that revocation proceedings should subsequently occur.
Id. at 601-602. Other courts have agreed with the Third Circuit regarding the nature of the interest involved. The Fifth and Eighth Circuits have held that "extension of a non-custodial period of supervision to a term within the statutory limits does not implicate a liberty interest sufficient to require a pre-extension hearing as a constitutionally commanded right."United States v. Cornwell, 625 F.2d 686, 688 (5th Cir. 1980);United States v. Carey, 565 F.2d 545, 547 (8th Cir. 1977). These courts agreed that any loss experienced from a probation extension did not correspond to the fundamental interest or serious loss involved in revoking probation or parole.Cornwell, 625 F.2d at 688. See also Ex Parte Harrington,883 S.W.2d 396, 401 (Tex. App. — Fort Worth 1994) (While revocation of probation results in incarceration, extension of probation merely results in the future possibility of revocation).
Once the nature of the interest is determined, it is necessary to determine what, if any, procedural safeguards are necessary. While it is necessary to provide an individual with notice and a hearing before revoking probation, as mentioned above, it is not constitutionally mandated when extending probation. In revoking probation, the Court must find that the terms and conditions of probation have been violated. In extending probation, however, fewer restrictions are imposed.Skipworth, 508 F.2d at 602. The Court does not need to find that a violation occurred, Id.; it is only necessary for the judge to determine whether "the best interest of society warrants the continuation of supervision over the probationer. UnitedStates v. Squillante, 144 F. Supp. 494, 497 (S.D.N.Y. 1956). This determination is within the sound discretion of the trial court. United States v. Chancey, 695 F.2d 1275 (11th Cir. 1983).
In the present case, the defendant was given notice of the Court's intention to extend his probation months before any action was taken. In fact, the defendant signed a stipulation agreeing to the extension. The Court fails to see how the defendant was prejudiced by the Court's action. Before the extension was granted, the defendant faced incarceration for failure to pay restitution when his original probation term ended. The extension provided the defendant an extra year to satisfy this condition of his probation. In addition, it was clearly in the best interest of society to maintain supervision over this defendant. The State has a much greater interest in seeing the Bakers compensated for their loss than it has in seeing the defendant incarcerated. The trial justice was well within his discretion to extend the defendant's probation.
Estoppel
The State suggests the defendant, having agreed to an extension of his probation is now estopped from challenging the Court's authority to conduct a violation hearing. Defendant contends that since a waiver involves the giving up of a known right, his agreement to the extension, executed by himself, an attorney and his present counsel is not valid.
The State cites State v. Mandicino, 509 N.W.2d 481 (Iowa 1993), in support of its position. In that case, the defendant applied to extend his probation to give him more time to pay his fine. Id. at 481-482. When the defendant was presented as a violator during the extended probationary period, he challenged the subject matter jurisdiction of the Court to take that action.Id. at 482. The reviewing court held that the trial court did have subject matter jurisdiction since it could hear probation issues generally, and stated that the defendant was really challenging the Court's authority to extend probation. Id. The Court held that the defendant's request to extend his probation estopped him from challenging the Court's authority. Id. at 483. It is noteworthy that the Court did not act under any statutory authority in extending the defendant's probation.
In re Griffin, 62 Cal.Rptr. 1 (1967), also addresses the issue of estoppel. In that case, the defendant sought to continue his violation hearing until after the termination date of his probationary term, and then challenged the Court's jurisdiction over him. Id. at 3. the Court held that when the Court has jurisdiction over the party, "a party who seeks or consents to action beyond the Court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction." Id. at 4 (citations omitted). In making its decision, the Court reasoned
 Whether [the defendant] shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when "to hold otherwise would permit the parties to trifle with the courts . . . The trial court's determination that he is estopped is in harmony with the proper operation of the probation system.
Id. at 5 (citations omitted).
In People v. Goodale, 235 Cal.Rptr. 688 (Cal.App. 4 Dist. 1987), the defendant negotiated a plea bargain that included a probation term in excess of the statutory maximum sentence. Id.
at 689-690. The Court stated that even though the Court's probationary power is purely statutory, judicial actions exceeding the statutory limits are not completely void abinitio. Id. at 690. In this case, the defendant agreed to the terms of the plea bargain, accepted its benefits, did not make timely objections, and later sought to deprive the State of its benefits. Id. at 691. The Court held that the defendant was estopped to complain. Id. In reaching its decision, the Court distinguished two cases cited by Mr. Traudt. In re Bolley,129 Cal.App.3d 555; 181 Cal.Rptr. 111 (1986), and People v.Gilchrist, 133 Cal.App.3d 38, 183 Cal.Rptr. 709 (1982). These cases involved defendants who accepted sentences beyond the Court's authority. The defendants in those cases were not estopped to challenge the Court's action because unlike Mr. Traudt, they had not participated in negotiating the sentences and therefore did not waive the right to challenge the Court's action in excess of its authority.
The Court is satisfied that the facts of the present case do give rise to estoppel. The defendant claims he should not be estopped to challenge the extension because he feels his agreement to the extension was coerced, not voluntary as inMandicino. The Court is not persuaded by this argument. Like the defendant in Mandicino, this defendant had a choice to extend the time for making payments, or face incarceration as a possible violator. The defendant clearly had a choice and cannot use coercion as an excuse to challenge the Court's actions. In fact, since the original extension, the defendant's attorney has repeatedly requested that the Court extend the defendant's probation even longer to allow him to complete the restitution payments. It is disingenuous for the defendant to stand before this Court, after making these requests, and challenge the Court's authority to make the original extension.
Like the defendant in Goodale, Mr. Traudt, through his attorney, actively negotiated his sentence before making his plea. In fact, the defendant successfully reduced his time to serve from six months to five months while holding out the promise of restitution. The defendant received a very favorable sentence on the basis of his representations that he would make restitution to his victims, a sizeable amount to come from the sale of his home. Clearly, Mr. Traudt had accepted the benefits of his bargain, while depriving the State and the Bakers of their benefits under the agreement.
The Court also finds that, as in Griffin, there is no policy preventing the Court from finding that the defendant is estopped to challenge the Court's authority. In fact, the use of probation extensions for the payment of restitution is a widespread practice in the Superior Court. It is a useful tool that allows the Court to maintain jurisdiction over the defendant without incarcerating him or her, so that the victims of the crime will be compensated for some of the losses they have suffered. In this manner, the Court finds that the use of probation extensions serves a valid purpose to the probation system, and the defendant should be estopped from challenging the Court's authority to exercise its discretion in this manner.
During oral argument and in chambers, the defendant argued that since there was a civil judgment against him for the amount he embezzled from the Bakers, he should not have to comply with the restitution order. This same argument was rejected by the First Circuit in United States v. Savoie, 985 F.2d 612, 619 (1st Cir. 1993). The Court held that restitution is a criminal penalty, not a civil matter. Id. at 619. Therefore, the fact that a civil judgment has been entered against the defendant has no bearing on his requirement to pay restitution.
Finally, defendant alleges that he has, at all times acted in the utmost good faith. That he has faithfully made the monthly payments ordered by the Court and appears to imply that since the Court only ordered a minimum monthly payment based on the defendant's salary the Court has somehow reduced the defendant's restitution obligation. This argument begs the question. Certainly the defendant's financial ability to make restitution, his good faith in dealing with the Court and the victims, his lifestyle, the extent of any mortgages and property tax arrearages occurring during the period from the time of the plea to the ultimate sale are the very issues to be addressed at a violation hearing. Bearden v. Georgia, supra. Clearly, the disposition of the equity in that house is very relevant on the issue of whether or not the defendant is a violator. That resolution requires an evidentiary hearing.
Conclusion
The Court has carefully reviewed the arguments of counsel, the memoranda submitted in support of those arguments, as well as the case law submitted by counsel. After due consideration, the Court holds that it is within the discretion of the trial justice to extend an individual's probation term to allow extra time to pay restitution. In addition, in the present case, the defendant is estopped from challenging the Court's authority to extend his probation as he voluntarily agreed to the extension and even sought subsequent extensions from the Court. Accordingly, the defendant's motion to dismiss is denied. A violation hearing will be scheduled forthwith.